# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

STARR SWEARINGEN WANECK
AND JIMMY LEE WANECK                                                                                     PLAINTIFFS

v.                                                CIVIL NO. 1:17cv106-HSO-JCG

CSX CORPORATION, ET AL.                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANT CSX TRANSPORTATION, INC.'S MOTION [9] TO DISMISS PLAINTIFFS' AMENDED COMPLAINT [1-1], AND GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANT CSX TRANSPORTATION, INC.'S MOTION [16] TO DISMISS CROSS-CLAIMS [3] OF DEFENDANT LOUIS AMBROSE, JR.

BEFORE THE COURT are Defendant CSX Transportation, Inc.'s Motion [9] to Dismiss Plaintiffs' Amended Complaint [1-1] and Motion to Dismiss [16] Cross-Claims [3] of Defendant Louis Ambrose, Jr. These Motions are fully briefed. The Court finds that Defendant CSX Transportation, Inc.'s Motions [9] [16] should be granted in part and denied without prejudice in part.

## I. RELEVANT BACKGROUND

A.    Relevant Factual and Procedural History

This matter arises out of a collision that occurred on March 7, 2017, when a charter bus, in which Plaintiffs Starr Swearingen Waneck and Jimmy Lee Waneck ("Plaintiffs") were passengers, became wedged on a railroad crossing on Main Street in Biloxi, Mississippi ("Main Street crossing"), and was struck by a freight train operated by Defendant CSX Transportation, Inc. ("CSXT"). Am. Compl. [1-1] at 44-46. Plaintiffs were allegedly injured in the crash, and accordingly filed a

Complaint on March 10, 2017, in the Circuit Court of Harrison County, Mississippi, Second Judicial District, followed by an Amended Complaint on March 20, 2017. Notice of Removal [1] at 1.

The Amended Complaint, which remains the operative pleading in this case, advances claims against Defendants CSX Corporation ("CSXC") and CSXT as owners/operators of the train; Defendants Echo Transportation Solutions, LLC ("Echo"), and TBL Group, Inc. ("TBL"), as owners and operators of the charter bus in which Plaintiffs were passengers; Defendant Diamond Tours, Inc. ("Diamond"), which planned and promoted the trip; and Defendant Louis Ambrose, Jr. ("Ambrose"), an employee of Echo and the driver of the charter bus. Am. Compl. [1-1] at 41-46. Plaintiffs allege that Defendants breached their respective duties to exercise reasonable care to avoid injuring or killing members of the public, and raise claims for negligence, gross negligence, negligence per se, willful and wanton conduct, recklessness, intentional conduct, and reckless and intentional disregard for the safety of the traveling public. *Id*. at 46-56. The Amended Complaint seeks an award of actual and punitive damages and costs from Defendants, jointly and severally. *Id*. at 56-58.

Plaintiffs' claims against CSXT and CSXC are for breach of their duties to "operate a train at a speed for the then existing conditions and be prepared to slow or stop for any hazardous conditions;" failure to inspect, repair, and report unsafe

2

crossings; intentional disregard for the safety of the traveling public; and failure to adequately man their "dispatch center" and respond to calls about the charter bus being stuck on the Main Street crossing. *Id*. at 47-53. Plaintiffs allege that CSXT and CSXC failed to properly maintain the Main Street crossing and allowed the roadway on both sides of the tracks to be paved and repaved, resulting in a severe incline or "hump," which condition was not repaired to eliminate the hazardous condition. *Id*. Defendants further failed to operate their trains in such a manner as to accommodate this dangerous condition. *Id*.

With respect to Echo, Diamond, and Ambrose, the Amended Complaint alleges these Defendants were negligent in, among other things, failing to properly operate the charter bus, causing it to become stuck on the Main Street crossing; failing to properly plan the route; failing to abide by and observe railroad signals; failing to yield the right of way to the train; and failing to abide by Mississippi traffic laws. *Id*. at 53-55.

On April 11, 2017, Defendants CSXC and CSXT removed the case to this Court based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331, on grounds that Plaintiffs' claims arise under "the Interstate Commerce Commission [Termination] Act of 1995 ("ICCTA"), 49 U.S.C. §§ 10101, *et seq*." and "the principles of supplemental jurisdiction, 28 U.S.C. § 1367." Notice of Removal [1] at 2 (emphasis in original). Subsequent to removal, Ambrose, the driver of the charter

3

bus, filed an Answer and Cross-Claims [3] against CSXT and CSXC. Ambrose advances essentially the same claims against CSXT and CSXC as those made by Plaintiffs. Cross-cl. [3] at 11-27.

B.   CSXT's Motions [9] [16] to Dismiss[1]

CSXT moves the Court to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), Mot. to Dismiss [9], arguing that Plaintiffs' purported tort claims are premised upon the rail crossing's configuration, maintenance, and operation such that they are completely preempted by the ICCTA. *See* CSXT Mem. in Supp. [10] at 1. CSXT contends that the claims as to train operations and CSXT's obligations over rail crossings are preempted by the Federal Railroad Safety Act of 1970 ("FRSA"), as amended, 49 U.S.C. §§ 20101, et seq. *See id.* In addition, CSXT takes the position that the Amended Complaint is subject to dismissal because it does not state any facially plausible claims under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See id.* at 12-13. CSXT has also filed a Motion [16] to Dismiss Cross-Claims of Defendant Ambrose, incorporating by reference its Motion [9] to Dismiss Plaintiffs' claims and supporting Memorandum

---

[1]  CSXC filed a separate Motion [7] to Dismiss the Amended Complaint and a separate Motion [17] to Dismiss the Cross-Claims based upon lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). On September 21, 2017, the Court denied these Motions [7] [17], without prejudice to CSXC's right to reurge them upon completion of jurisdictional discovery, which is ongoing.

4

[10] and arguing that Ambrose's Cross-Claims should be dismissed for the same reasons. Mot. to Dismiss [16] at 1-2. CSXT characterizes Plaintiffs' and Ambrose's claims against it as follows:

> The [amended] complaint takes aim at the Main Street crossing—specifically, at CSXT's configuration, care and maintenance of the crossing. Plaintiffs contend that this rail crossing is "dangerous and severely inclined or 'humped,'" [Am. Compl.] ¶ 25; that the crossing is "dangerous" due to "automated CSX railroad maintenance practices," *id.*; and that "[t]he Collision described in this Complaint is a direct and proximate result of the negligence of the Defendant Railroad" in creating a "severe incline or 'hump,'" *id.* ¶ 44.
>
> The complaint adds a series of alleged safety-related duties that CSXT is said to have violated: supposed duties regarding train operations, (*id.* ¶¶ 36-39); failure to inspect and repair unsafe crossing, (*id.* ¶¶ 40-43); and failure to report unsafe conditions, (*id.* ¶¶ 51-54).
>
> The complaint asserts common law claims of negligence, gross negligence, (*id.* ¶¶ 35-54) and "Intentional Disregard For Public Safety," (*id.* ¶¶ 60-64) and seeks compensatory and punitive damages.

CSXT Mem. in Supp. [10] at 2-3 (footnote omitted).

Plaintiffs' and Ambrose's respective Responses [33] [19] in Opposition to CSXT's Motions are essentially identical and maintain that their claims against CSXT are not preempted because they are "grounded in negligence or intentional tort, both of which are time-honored creatures of Mississippi common law." Pls. Resp. in Opp'n [33] at 1-2; Pls. Mem. in Opp'n [34] at 2; Ambrose's Mem. in Opp'n. [20] at 7-8. They dispute that their claims concerning the Main Street crossing relate in any way to its design or construction and insist their allegations are

5

simply limited to maintenance of the crossing. Plaintiffs further assert that their "well-pled 18 page [Amended] Complaint set[s] forth specific, factual allegations regarding CSXT's duties and its violations thereof," satisfying the requirements of Federal Rule of Civil Procedure 8.

## II. DISCUSSION

A.  Relevant Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the "[C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

> The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl.*

6

> *Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

*Id.* (footnote omitted).

B.  <u>Preemption under the ICCTA and the FRSA</u>

CSXT contends that Plaintiffs' and Ambrose's claims relating to the maintenance of the Main Street crossing are in fact claims pertaining to the design and construction of the crossing such that they are completely preempted by federal law. CSXT Mem. in Supp. [10] at 8. With respect to the claims that relate to the configuration, operation, and maintenance of the Main Street crossing and related rail structures, CSXT contends that Plaintiffs are attempting to interfere with CSXT's decisions on how to run "crossing-related aspects of its rail operations" which is preempted by the ICCTA and/or FRSA. *Id.* at 7-8. CSXT further maintains that FRSA preempts the claims concerning train operations, the failure to inspect and repair an unsafe crossing, unsafe crossing conditions, and the failure to report unsafe conditions. *Id.* at 10. Plaintiffs and Ambrose counter that they have only raised state law causes of action sounding in tort and that CSXT is attempting to rewrite their claims in order for them to be preempted.

7

1. <u>The Doctrine of Preemption</u>

Generally, "a plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist." *Elam v Kan. City S. Ry. Co.,* 635 F.3d 796, 803 (5th Cir. 2011) (citing *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008)). Under the well-pleaded complaint rule, a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint. *Id*. Accordingly, "there is no federal [question] jurisdiction if the plaintiff properly pleads only a state law cause of action." *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008) (quoting *Bernhard*, 523 F.3d at 551).

The United States Court of Appeals for the Fifth Circuit has held that

> [a]n exception to the well-pleaded complaint rule arises when Congress "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Gutierrez*, 543 F.3d at 252 (quoting *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000)). Under the "complete preemption" doctrine, "what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displaces state law that the plaintiff's cause of action is either wholly federal or nothing at all." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 330 (5th Cir. 2008) (internal quotation marks and brackets omitted); *see also Franks [Inv. Co, LLC v. Union Pac. R.R. Co.], 593 F.3d [404,] at 407 (5th Cir. 2010)].* "The question in complete preemption analysis is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law." *Barrois*, 533 F.3d at 331; *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003).

8

*Elam,* 635 F.3d at 803.

Complete preemption must be distinguished from "defensive preemption" (i.e., "conflict preemption" or "ordinary preemption") which does not create federal jurisdiction and simply "declares the primacy of federal law, regardless of the forum or the claim." *Barrois*, 533 F.3d at 331. Generally speaking, complete preemption is less common and more extraordinary than defensive or ordinary preemption, and it is therefore a narrow exception to the well-pleaded complaint rule. *Elam,* 635 F.3d at 803 (citation omitted). The party raising preemption bears the burden of persuasion. *Id.* at 802 (citations omitted).

2. The ICCTA preempts Plaintiffs' and Ambrose's claims concerning the physical characteristics and maintenance of the Main Street crossing and related rail structures.

CSXT argues that Plaintiffs' and Ambrose's "improper maintenance claims" are in actuality claims concerning the physical characteristics of the Main Street crossing, including the configuration, operation, and maintenance of the crossing and related rail structures. CSXT Mem. in Supp. [10] at 1, 5-8. As such, these claims constitute an attempt to interfere with CSXT's decisions on how to run "crossing-related aspects of its rail operations" and are completely preempted by the ICCTA. *Id.*

In *Elam*, the Fifth Circuit addressed a somewhat similar situation in which the plaintiffs suffered injuries when their vehicle collided with a stalled train

9

blocking a crossing. *Elam,* 635 F.3d at 801-02. Plaintiffs in that case advanced claims against the railroad for negligence per se under Mississippi's antiblocking statute, Mississippi Code § 77-9-235. *Id*. at 802. In finding that such claims were preempted, the Fifth Circuit held that

> Effective January 1, 1996, the ICCTA abolished the Interstate Commerce Commission (ICC) and created a new Surface Transportation Board (STB) to regulate, inter alia, rail transportation in the United States. 49 U.S.C. § 10501(a)(1); *Friberg*, 267 F.3d at 442. The purpose of the ICCTA is to "build[] on the deregulatory policies that have promoted growth and stability in the surface transportation sector." H.R. Rep. No. 104-311, at 93 (1995), *reprinted in* 1995 U.S.C.C.A.N. 793, 805. With respect to rail transportation, the ICCTA seeks to implement a "[f]ederal scheme of minimal regulation for this intrinsically interstate form of transportation," and to retain only regulations "that are necessary to maintain a 'safety net' or 'backstop' of remedies to address problems of rates, access to facilities, and industry restructuring." *Id*. at 93, 96; *see also* 49 U.S.C. § 10101(2).
>
> The ICCTA creates exclusive federal regulatory jurisdiction and exclusive federal remedies. Specifically, the ICCTA provides:
>
> The jurisdiction of the [STB] over—
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail

10

> transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).

*Elam,* 635 F.3d at 804-05; *see also Franks Inv. Co, LLC v. Union Pac. R.R. Co.,* 593 F.3d 404, at 406-07 (5th Cir. 2010).

"Put another way, when a plaintiff's tort claim directly attempts to manage or govern a railroad's decisions in the economic realm, that claim 'is either wholly federal or nothing at all.'" *Elam,* 635 F.3d at 807 (quoting *Barrois,* 533 F.3d at 330). *Elam* concluded that by attempting to regulate in areas such as "switching operations, and even a train's length or speed, or how long a train may occupy a crossing," Mississippi's antiblocking statute interfered with interstate commerce and constituted a direct attempt to manage or govern a railroad's decisions in the economic realm. *Id.* Plaintiffs' negligence per se claims were therefore completely preempted.[2] *Id.*; *see also Friberg v. Kan. City S. Ry.*, 267 F.3d 439, 442-44 (5th Cir. 2001). The Fifth Circuit has subsequently determined that, just as a local attempt to regulate the construction of rail lines is preempted, a city's attempts to regulate "the slope or other features of the embankments for the railroad tracks themselves

---

[2] *Elam* remanded plaintiffs' simple negligence claims to the district court for further proceedings because they were not adequately briefed. *Elam*, 635 F.3d at 813-15.

11

are expressly preempted." *Tex. Cent. Bus. Lines Corp. v. City of Midlothian*, 669 F.3d 525, 533 (5th Cir. 2012).

In this case, the Amended Complaint and the Cross-Claims assert that CSXT was negligent in its maintenance of the Main Street crossing by adding layer after layer of asphalt patches which ultimately resulted in a dangerous and severely "humped" crossing, and that it was negligent in its operation of its trains over the crossing. Am. Compl. [1-1] at 45, 47-53. CSXT argues that this is tantamount to a claim regarding the design and construction of the crossing, making it subject to preemption under the ICCTA. The Court agrees. It is readily apparent that the resolution of Plaintiffs' and Ambrose's claims against CSXT for negligence arising out of the alleged "improper maintenance" of the Main Street crossing rests entirely upon underlying issues of the crossing's design, construction, and configuration. These are the sort of claims Congress intended the ICCTA to preempt, namely state law claims that directly attempt to manage or govern a railroad's decisions in the economic realm such as the construction and operation of tracks, scheduling, a train's length or speed, or how long a train may occupy a crossing. *See Elam*, 635 F.3d at 807; *Friberg,* 267 F.3d at 442-44.

The Court finds that Plaintiffs' and Ambrose's claims for "improper maintenance" of the Main Street crossing are in substance and reality claims arising out of the "design and construction" of the crossing, making them completely

preempted by the ICCTA. Because permitting such claims to proceed would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting ICCTA, these claims should be dismissed. *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (citation and internal quotation marks omitted).

>   3.   <u>CSXT has not met its burden of establishing that the claims for negligence such as the failure to slow the train, to apply the brakes, or to be prepared to stop, are preempted by FRSA.</u>

In 1970, Congress enacted the FRSA "to promote safety in all areas of railroad operations and to reduce railroad-related accidents and incidents." *Ill. Cent. R.R. Co. v. Cryogenic Transp, Inc.*, 901 F. Supp. 2d 790, 794 (S.D. Miss. 2012) (quoting *Norfolk Southern Railway Co. v. Shanklin*, 529 U.S. 344, 347 (2000) (citing Title 49 U.S.C. § 20101)). "The FRSA grants the Secretary of Transportation authority to 'prescribe regulations and issue orders for every area of railroad safety,' § 20103(a), and directs the Secretary to 'maintain a coordinated effort to develop and carry out solutions to the railroad grade crossing problem,' § 20134(a)." *Shanklin,* 529 U.S. at 347. Congress amended FRSA's preemption provision in 2007 to clarify, in pertinent part, that FRSA does not preempt state tort claims for "personal injury, death, or property damage" if a railroad defendant has failed to comply with the federal standard of care, the railroad's own plan or rules, or with a state law that is not incompatible with the FRSA. *Cryogenic*, 901 F. Supp. 2d at

13

795-96 (citing § 20106). The FRSA does, however, preempt state laws concerning the maximum operating speeds for trains based upon the nature of the track on which they operate as well as laws concerning the warnings required at that track's crossings. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 673-76 (1993).

Although FRSA preempts "excessive speed claims," the duty to slow or stop a train to avoid a specific, individualized hazard in order to avoid a collision has not been held to be preempted. *Hensling v. CSX Transp., Inc.*, 396 F.3d 632, 640 (5th Cir. 2005) (quotations omitted) (citing *Easterwood*, 507 U.S. at 675). The United States District Court for the Southern District of Mississippi has affirmatively held that, whether a train engineer breached a duty to respond appropriately to avoid a collision where a vehicle was sitting on the tracks is not preempted because it does not "impose a specific limit on the train's operating speed, but rests on factual issues to be decided by a jury as to whether the engineer's efforts to avoid the collision were sufficient." *Cryogenic*, 901 F. Supp. 2d at 804.

Here, at this stage of the proceedings the Court is unable to say that Plaintiffs' and Ambrose's negligence claims regarding CSXT's duty to "operate a train at a speed for the then existing conditions and be prepared to slow or stop for any hazardous conditions," CSXT's alleged intentional disregard for the safety of the traveling public, and CSXT's purported failure to adequately man their "dispatch center" and respond to calls about the charter bus being stuck on the

14

Main Street crossing, are necessarily preempted by FRSA.[3] Dismissal of these claims pursuant to Rule 12(b)(6) would not be appropriate at this time. CSXT's Motions should be denied without prejudice in this respect.

III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the outcome. The Court finds that CSXT's Motions [9] [16] to Dismiss Plaintiff's and Ambrose's claims of "improper maintenance" of the Main Street crossing should be granted and those claims will be dismissed with prejudice. At this stage in the litigation, the Court finds that Plaintiffs' and Ambrose's claims regarding CSXT's duty to "operate a train at a speed for the then existing conditions and be prepared to slow or stop for any hazardous conditions," CSXT's alleged intentional disregard for the safety of the traveling public, and CSXT's purported failure to adequately man their "dispatch center" and respond to calls about the charter bus being stuck on the Main Street crossing, should not be dismissed. CSXT's Motions will be denied without prejudice as to those claims.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant CSX Transportation, Inc.'s Motion [9] to Dismiss Plaintiffs' Amended Complaint [1-1]

---

[3] The Court expresses no view on whether some of these claims may later be subject to dismissal on a more developed record following the completion of discovery.

and Motion to Dismiss [16] Cross-Claims [3] of Defendant Louis Ambrose, Jr., as to Plaintiff's and Ambrose's claims for any "improper maintenance" of the Main Street crossing are **GRANTED** and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendant CSX Transportation, Inc.'s Motion [9] to Dismiss Plaintiffs' Amended Complaint [1-1] and Motion to Dismiss [16] Cross-Claims [3] of Defendant Louis Ambrose, Jr., as to Plaintiffs' and Ambrose's claims regarding CSXT's duty to "operate a train at a speed for the then existing conditions and be prepared to slow or stop for any hazardous conditions," CSXT's alleged intentional disregard for the safety of the traveling public, and CSXT's purported failure to adequately man their "dispatch center" and respond to calls about the charter bus being stuck on the Main Street crossing, are **DENIED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 29th day of March, 2018.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE