**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| **STARR SWEARINGEN WANECK; and JIMMY LEE WANECK**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**CSX CORPORATION; CSX TRANSPORTATION, INC.; ECHO TRANSPORTATION SOLUTIONS, LLC; TBL GROUP, INC.; JOHN DOE;, ET AL.,**<br><br>    **Defendants.** | **Case No. 1:17-cv-00106-HSO-JCG** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO REMAND**

Pursuant to 28 U.S.C. 1447(c), Plaintiffs hereby file this Memorandum in Support of their Motion to Remand and respectfully offer the following:

**FACTUAL BACKGROUND**

1.      Plaintiff, Starr Waneck, was a passenger in a tour bus involved in a railroad crossing accident in Biloxi, Mississippi. While attempting to cross the Main Street railroad crossing in Biloxi, the tour bus got stuck on the "humped" railroad crossing, and moments later was hit by a train owned and operated by CSX Transportation, Inc. ("CSXT").

2.      This case was originally filed in the Circuit Court of Harrison County, Mississippi. (ECF 1-1.)

3.      Plaintiffs did not allege any federal claims and specifically limited their claims to state common law claims. Plaintiffs alleged that negligent track maintenance had created the

hump at this crossing and that CSXT's negligence caused this tragic crash.  (*See* ECF 1-1 at 45, 47-53.)

4.       CSXT removed the case to this Court, based solely on the allegation that this Court has federal question jurisdiction. (*See* ECF 1 at 2.)

5.       CSXT based removal on re-characterizing Plaintiffs' claims as attempts to economically control the way CSXT designed and constructed the Main Street crossing. According to CSXT's federal question theory, the Surface Transportation Board ("STB") has exclusive jurisdiction over this attempt to govern the way CSXT designed and constructed the Main Street crossing based on the Interstate Commerce Commission Act ("ICCTA") preemption. (*Id*. at 2-9.)

6.       CSXT relied on the affidavits of Eric Hendrickson and Jacob Smith to support the proposition that Plaintiffs' claims were design and construction claims.  (ECF No. 1-2, 1-3 and 4)  Those affidavits state *inter alia* that if CSXT were to close the crossing in Biloxi to temporarily reconstruct the Biloxi crossing, CSXT's operation would suffer greatly; CSXT's ability and operational flexibility to efficiently conduct railroad operations would be limited;  to regrade and lower the track through the Biloxi crossing, CSXT would be required to tear up the rail lines and regrade at least two miles of track;  that work would require reworking all or most track through the City of Biloxi,;  CSXT cannot independently close public crossings to vehicle traffic in Mississippi without  authorization and approval from the City of Biloxi and MDOT- a process which requires initial negotiations and approval from the City and MDOT to close the crossing after the MDOT holds a public meeting in order for the public to voice any concerns- a process which can take years   (*Id.*) The affidavits fail to mention that CSXT performed maintenance on this subject crossing in February 2014 without notifying the City of Biloxi or the

MDOT. (Ex. 1 NTSB Highway Factors Group Factual Report at page 20.)  Instead of performing proper maintenance and keeping the track level the same, or slightly reducing it using an undercutter as Plaintiffs' expert Alan Blackwell opined (ECF 63-1, CSX's 2014 maintenance activities **increased** the elevation, causing the bus Plaintiffs' were riding in to become hung up on the crossing. (Ex. 1, at page 20) [1]

7.     This Court has previously ruled in favor of CSXT by finding that Plaintiffs' claims for 'improper maintenance' of the Main Street crossing are in substance and reality claims arising out of the 'design and construction' of the crossing, making them completely preempted by the ICCTA. (ECF 146 at 12-13.)

8.     Subsequent to the dismissal ruling of this Court, the National Transportation Safety Board ("NTSB") issued its factual reports and final investigative report concerning the crash giving rise to this litigation.  The factual findings in the NTSB reports support Plaintiffs' position that the hump at this crossing was caused by negligent maintenance by CSXT.  The NTSB factual reports found, among other things, that when CSXT performs a tie replacement project, "the track elevation could typically be raised by up to two-inches, after which an approximate 1/2-inch settlement of the tracks would be expected due to the compaction process." (Ex.1 NTSB Highway Factors Group Factual Report at page 20.)  The evidence collected by the NTSB revealed the following:

> In February 2014, CSXT replaced wooden railroad ties along the section of track that included the Main Street crossing. Tie replacement typically results in raising the track by about 1.5 inches. MDOT was not informed of this planned maintenance or of the resulting increase in track elevation.

---

[1] The Court also denied Plaintiffs motion to reconsider that dismissal. (ECF 154)  That Order was entered April 26, 2018 before the Surface Transportation Board's rulings of May 25, 2018 and October 31, 2018 and before the NTSB issued its final report on August 7, 2018.  The effect of the rulings and factual findings is discussed *infra*.

. . .

One common consequence of regular railroad maintenance—specifically, the replacement of wooden ties—is to increase the vertical profiles of grade crossings. The effects of such maintenance were evident in the dramatic increase in the frequency of vehicle groundings at the Main Street grade crossing following the February 2014 replacement of wooden railroad ties. The NTSB concludes that, due to the February 2014 track maintenance work, which increased the crossing's vertical profile and resulted in increased frequency of vehicle groundings, the Main Street grade crossing had been unsafe for certain types of vehicles for several years before the fatal March 2017 crash.

At the Main Street crossing, the wooden railroad ties had last been replaced in February 2014. The 23 vehicle groundings that were reported at the crossing in the 3 years after the February 2014 track maintenance—compared to only 3 reported groundings for the previous 2 years— suggest that the last elevation of the tracks substantially increased the risk of vehicle groundings on the crossing. Railroad maintenance that affects a grade crossing's vertical profile can have a considerable safety impact on all road users, particularly when it increases the crossing's vertical profile beyond recommended parameters, as specified by both highway (AASHTO and the FHWA) and railroad (AREMA) organizations.

. . .

At a minimum, however, with better communication, MDOT and the City of Biloxi would have had the opportunity to consider the potential for increased risk of vehicle groundings on the crossing. By not communicating effectively with MDOT and the city about the crossing maintenance and its consequences, CSXT denied them this opportunity.

The NTSB concludes that, had CSXT communicated and coordinated with the City of Biloxi and MDOT about planned railroad projects that might affect the vertical profiles of grade crossings in their jurisdictions, it would have provided them the opportunity to assess and monitor the risks of vehicle groundings and, if necessary, to take proactive action to reduce those risks. Therefore, the NTSB recommends that all Class I railroads implement a process to notify and coordinate with the local and state transportation agencies responsible for highway maintenance at grade crossings as early as possible before conducting any planned maintenance work that has the potential to increase track elevation.

[Ex. 1, NTSB Report at 29, 51-52 ("Factual Information" page numbers at 20, 42-43.)]

9.      On March 5, 2018, Plaintiffs, along with all other passengers of the tour bus, petitioned the STB for a declaratory order that Plaintiffs' safety-related negligence crossing maintenance claims against CSXT fall within the scope of the Federal Railroad Safety Act , 49 U.S.C. § 20106  (FRSA) savings clause and are not completely preempted by the ICCTA. On March 25, 2018, CSXT filed its Reply March 26, 2018, arguing that the declaratory order request should be denied.  On March 30, 2018, CSXT filed this Court's Order (ECF 146) with the STB. On April 4, 2018, Plaintiffs responded to CSXT's March 26 and March 30 filings arguing that the preemption determination was not moot and requested the STB to provide guidance on the proper interplay between § 10501(b) and § 20106(b). [Ex. 2, *See Jimmy Lee Waneck & Starr Swearingen Waneck, et al. Petition for Declaratory Order ("Waneck I")*, Fed. Carr. Cas. (CCH) ¶ 37399, 2018 WL 2392567 (STB May 23, 2018)].

10.     On May 25, 2018, the STB issued an Order denying Plaintiffs' Petition, but provided guidance on the question of preemption concerning Plaintiffs' safety-related negligent crossing maintenance claims.). (*Id.*)   The STB's guidance provided that the correct standard governing questions of preemption of state tort claims stemming from the train's collision with the bus at a humped crossing is whether such claims are "safety-related claims." If so, "any federal preemption questions concerning such claims are governed by what is cognizable under FRSA, including §20106(b), not §10501(b)." *Id.*

11.     Since the STB's guidance was clearly at odds with CSXT's position in this case, on June 14, 2018, CSXT petitioned the STB to amend or withdraw its guidance regarding the inapplicability of ICCTA preemption to Plaintiffs' safety-related claims.

12.    On October 31, 2018, the STB issued a decision denying CSXT's petition for

reconsideration, reaffirming its guidance that

> In the [Waneck] case, however, as the Board explained in its <u>May 25 Guidance</u> <u>Decision</u>, Petitioners' state law tort claims concerning the accident at the crossing appear to be focused on purely safety-related issues. Unlike the regulation at issue in <u>CSXT I</u> and <u>CSXT II</u>, **Petitioners' claims dealing with allegedly unsafe conditions at a rail crossing are not in direct conflict with the Board's exclusive jurisdiction over transportation that is part of the interstate rail network.**

(Ex. 3; *Jimmy Lee Waneck & Starr Swearingen Waneck, et al-Petition for Declaratory Order*

*("Waneck II")*, FD 36167, 2018 WL 5723286 at *7 (Oct. 31, 2018).  The STB further stated that:

> The Board explained that, in its view, all of Petitioners' claims were rail safety-related claims stemming from a fatal train collision with a bus and cited existing precedent providing that "any federal preemption questions concerning such claims are governed by what is cognizable under FRSA, including § 20106(b), not [ICCTA] § 10501(b)." <u>May 25 Guidance Decision</u>, FD 36167, slip op. at 4.

*Id*. at *8.

13.    Plaintiffs' respectfully request this Court follow the STB guidance and the factual

record set forth by the NTSB, and find there is no federal question based on complete

preemption because Plaintiffs' claims are cognizable under the FRSA—not the ICCTA.

Therefore, remand to Mississippi state court on all Plaintiffs' claims is appropriate.

## ARGUMENTS AND AUTHORITIES

### I.    Federal Question Remand Standard

CSXT, as the party seeking removal, has the burden to establish federal subject matter

jurisdiction.  *Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387, 397 (5th Cir. 1998).  It is

well established that because the removal statute involves significant federalism concerns, the

statute must be strictly construed and all doubts about federal jurisdiction must be resolved in

favor of remand.  *See, e.g., Gutierrez v. Flores,* 543 F.3d 248, 251 (5th Cir. 2008).  CSXT's sole basis for removal is federal question jurisdiction. (*See* ECF 1.)

The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Under the well-pleaded complaint rule, plaintiffs are the masters of their complaint, and may choose to allege only state-law claims even where federal remedies exist.  *Elam v. Kansas City S. Ry. Co.,* 635 F.3d 796, 803 (5th Cir. 2011).  Importantly, "that federal law might provide a defense to a state law cause of action does not create federal question jurisdiction."  *See Id.*

Plaintiffs here clearly pled only state law claims.  Hence, CSXT's only remote possibility for establishing federal question jurisdiction is complete preemption.  CSXT's burden is high because complete preemption is rare and is a very "narrow" exception to the well-pleaded complaint rule.  *See Id.* Moreover, the United States Supreme Court has consistently held that a defendant arguing preemption must overcome a strong presumption in favor of preserving state law, particularly state common law remedies for personal injuries:  "we have long presumed that state laws – particularly those, such as the provision of tort remedies to compensate for personal injuries, that are within the scope of the State's historic police powers – are not to be preempted by a federal statute unless it is the clear and manifest purpose of Congress to do so."  *Geier v. Am. Honda Motor, Co*., 529 U.S. 861, 894 (2000).  Lastly, preemption is even less favored and rarely found to exist where doing so would leave the injured party without a remedy.  *See, e.g., Silkwood v. Kerr McGee Corp*., 464 U.S. 238, 251 (1984) ("[i]t is difficult to believe that

Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct."). CSXT has a very heavy burden to carry here to establish complete preemption over these state common law personal injury claims. That burden has become even greater now that the STB has specifically disavowed any jurisdiction over these claims.

## II.   THE NTSB'S FACTUAL FINDINGS—CROSSING MAINTENANCE INCREASED ELEVATION/HUMPED THE MAIN STREET CROSSING

CSXT's claim that the creation of the hump in some way economically controls the way CSXT designed and constructed the Main Street crossing is clearly rebutted in the NTSB's factual findings. The NTSB called the February 2014 wooden railroad ties replacement exactly what it was- maintenance. That maintenance work raised the track by 1.5 inches. Despite increasing the risk of vehicles getting stuck on the track, CSXT never informed MDOT. Because CSXT did not communicate with MDOT and the City of Biloxi, those entities did not have the opportunity to consider the potential for increased risk of vehicle groundings on the crossing- a safety issue. Steps to protect the public could have been undertaken and were not taken. This bus and other vehicles stalled on the tracks because of the increased elevation.

The CSXT affidavits of Hendrickson and Smith describe defined steps to be taken to work on this crossing. CSXT was to contact the City and the MDOT. The NTSB investigation found that was not done-yet CSXT's maintenance work did increase the elevation of the tracks in February 2014. Contrary to the CSXT affidavits, there was no public hearing by the MDOT, no shutdown of the tracks for a long period of time, no indication CSXT reworked 2 miles of track, that its operation suffered, or that CSXT's ability to efficiently conduct railroad operations was limited for this 2014 maintenance work. Those sworn affidavits allegedly stated the requirements if CSXT were to change the elevation of its tracks at this crossing. However, none of those alleged

requirements were done in February 2014.  It also conveys to the reader no work was done in February 2014 because of the complex nature of rail operations.  If  CSXT's System of five hubs that connect CSXT's rail network to other Class I railroads operating in the western United States had been impacted economically by the maintenance work of February 2014, Hendrickson and Smith would have stated that in their affidavits. After all according to the CSXT, the Biloxi crossing is part of the main line supporting the Southern Corridor and access to the New Orleans hub. The Mississippi line is one of the densest rail freight corridors in the CSXT's Southern Corridor.   But, there is no indication that CSXT's ability and operational flexibility to efficiently conduct railroad operations through the Southern Corridor. Mainline rail traffic was not affected by the maintenance and crossing elevation increase in February 2014. Nor is there any evidence of a nationwide detrimental effect on railway operations.  CSXT has presented no evidence other railroads charged CSXT a rerouting fee.  Despite the assertion by Hendrickson that approval of the Surface Transportation Board is also required in order to close a section of track to change the elevation of its track, it is clear from the filings before the STB, the STB's rulings and the NTSB report that it did not know of such closure in February of 2014.  That's because there was none.  Nor is there any indication of military base closings.  Hendrickson's affidavit describes he is working on a relatively simple track reconstruction project that involves only a single highway-rail crossing at a cost of approximately $1.5 million.  Despite his involvement of projects, he either had no knowledge of the maintenance work in February 2014 or just failed to disclose this project.  Apparently, instead of following its sworn criteria for altering the elevation of its tracks, in February of 2014 CSX maintenance crews changed the vertical elevation of its tracks at this crossing without following a single criteria that Hendrickson and Smith  swore

would be required.  Instead of increasing safety, this change in elevation caused vehicles to high-center on its tracks. The NTSB factual discovery reveals the simple truth that none of the alleged criteria is required for CSX maintenance operations to change the level of its tracks.

What was done was maintenance on the track at this crossing.  That is what the NTSB determined - CSXT raised this track purely as a maintenance issue.  The affidavits failed to advise this Court of the maintenance.  Mr. Hendrickson as the Director of Network Planning and Mr. Smith as the Engineering Public Projects had to know or certainly should have known this track was raised in February 2014.  Their affidavits when read in entirety convey to the Court that no work was done on this crossing.  That simply is not true.

The increased elevation resulted in an increase in vehicle groundings at the Main Street grade crossing.  NTSB's investigation determined there were 23 vehicle groundings reported at the crossing in the 3 years after the February 2014 track maintenance—compared to only 3 reported groundings for the previous 2 years.  The increased elevation of the tracks in February 2014 substantially increased the risk of vehicle groundings on the crossing.

Perhaps most telling of the NTSB factual finding is that this railroad maintenance changed the grade crossing's vertical profile resulting in a considerable safety impact on all road users.  The track's vertical profile was increased beyond recommended parameters, as specified by both highway (AASHTO and the FHWA) and railroad (AREMA) organizations.  There is no indication from the NTSB the maintenance in any way attempted to manage or govern CSXT's decisions in the economic realm.  In a similar case where a vehicle stalled on the tracks and the railroad claimed complete preemption under the ICCTA, the District Court for the Western District of Arkansas found that none of the plaintiffs' typical state law claims attempted to

manage or govern the defendant railroad's decisions in the economic realm.   *Rawls v. Union Pacific Railway Company*,   No. 1:09-cv-01037, 2012 WL 2803764 (W.D. Ark. Jul. 10, 2012).[2] In *Rawls*, the plaintiffs sought to impose state *safety* regulation.   That is what the Plaintiffs seek here.   The *Rawls* court decided that ICCTA is economic and did not preempt the state common law claims.   The case was remanded back to state court. (See more detailed discussion of Rawls infra at …)

The NTSB's factual findings when coupled with the STB's guidance on the question of preemption concerning Plaintiffs' safety-related negligent crossing maintenance claims as demonstrated in the following section dictate that the correct standard governing questions of preemption of state tort claims stemming from the train's collision with the bus at a humped crossing is that Plaintiffs' stated claims are not only "safety-related claims," they are in fact safety issues not economic issue.   Accordingly, the STB is correct that any federal preemption questions concerning such claims are governed by what is cognizable under FRSA, including §20106(b), not §10501(b).   There is no longer a federal question to support federal jurisdiction.

### III.   STB HOLDING — PLAINTIFFS' SAFETY-RELATED CLAIMS SHOULD BE EVALUATED UNDER FRSA <u>NOT</u> ICCTA

The STB's Guidance in this case makes clear that the FRSA, not the ICCTA should control preemption analysis.   The STB's guidance on its own regulations is persuasive authority. According to the STB, "Whether the claims are characterized as related to 'maintenance' or 'design or construction' was not relevant. . . .   The relevant inquiry is whether [Plaintiffs'] claims

---

[2] As the STB acknowledged in footnote 9 - a safety-related claim may have an indirect effect on rail operations. However, that does not necessarily mean that the claims are not primarily safety-related. *Jimmy Lee Waneck & Starr Swearingen Waneck, et al-Petition for Declaratory Order ("Waneck II")*, FD 36167, 2018 WL 5723286 at *7 (Oct. 31, 2018)

are safety-related or not." *Waneck II*, 2018 WL 5723286, at *5.  Here, all Plaintiffs' claims are

safety related, and thus, should be analyzed under the FRSA, not ICCTA.

In response to CSXT's motion for reconsideration or withdrawal of the STB's guidance

that the FRSA, not the ICCTA, controls whether Plaintiffs' safety-related claims are cognizable,

the STB provided an excellent historical analysis on these regulations.

> In § 20106, Congress delineated which types of state laws, regulations, and tort
> claims are preempted by FRSA and which are saved from FRSA preemption.
> **However, because the ICCTA preemption provision can be read to cover**
> **virtually everything related to rail transportation and because rail safety-**
> **related claims will almost always touch on rail transportation and**
> **operations, interpreting ICCTA preemption to apply generally to safety**
> **regulations and safety-related claims would amount to a repeal by**
> **implication of the savings provision of FRSA.** *See Tyrrell v. Norfolk S. Ry.*, 248
> F.3d 517, 522-23 (6th Cir. 2001); *accord Island Park, LLC v. CSX Transp.*, 559
> F.3d 96, 106-08 (2d Cir. 2009).

*Waneck II*, 2018 WL 5723286, at *5. (emphasis added)

The STB acknowledged the inherent flaw that CSXT and other railroad companies are

trying to exploit with ICCTA preemption analysis, "a safety-related claim may have an indirect

effect on rail operations. However, that does not necessarily mean that the claims are not

primarily safety-related." *Id.* at *8 (citing *Tyrrell*, 248 F.3d at 523-24.); *see also Silkwood v.

Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984).  If this were true, the ICCTA would swallow up

all personal injury crossing negligence claims that might any incidental effect on rail operations.

This is not what Congress envisioned, nor is it consistent with Plaintiffs' 7th Amendment right to

a jury trial. *See* U.S. Const. amend. VII.

In *Silkwood*, noting "Congress' failure to provide any federal remedy for persons

injured," Justice White, writing for the majority, concluded that Congress could not have

intended to preempt state tort causes of action. "It is difficult to believe that Congress would,

12

without comment, remove all means of judicial recourse for those injured by illegal conduct." *Id.* at 251. Justice Blackmun, in his dissent, agreed with the majority on this point: "The absence of federal regulation governing the compensation of victims . . . is strong evidence that Congress intended the matter to be left to the States." *Id.* at 264 n.7 (Blackmun, J., dissenting).

The same is true here. The federal agency interpreting its own statute found the ICCTA to be an inappropriate statute to analyze Plaintiffs' safety-related negligence claims. Instead, these claims should be analyzed under the FRSA. And "numerous lower courts have determined that the FRSA does not completely preempt state law tort claims against railroads for failure to comply with federal railroad crossing regulations because it does not create a federal remedy." *Stevenson v. Fort Worth & W. R. Co.*, No. 3:15-CV-0625-B, 2015 WL 3884645, at *2 (N.D. Tex. June 24, 2015).[3]

The "ICCTA and FRSA must be construed *in pari materia*. . . ." *Waneck I*, 2018 WL 2392567 at *4. Consistent with the federal scheme, "the principle that regulation of rail safety, which Congress explicitly permitted under FRSA, is not inconsistent with regulation of interstate rail transportation under ICCTA and that, to give effect to both statutes, **safety regulations and related claims are generally not subject to ICCTA preemption**." *Waneck*, 2018 WL 5723286, at *7 (emphasis added) As such, Plaintiffs "claims dealing with allegedly unsafe conditions at a rail crossing are not in direct conflict with the Board's exclusive jurisdiction over transportation that is part of the interstate rail network." *Waneck II*, 2018 WL 5723286, at *7.

---

[3] *See also, Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 575-576 (5th Cir. 2004)*; Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1093 (S.D. Ill. 2007); *Sullivan v. BNSF Ry. Co.*, 447 F.Supp.2d 1092, 1099 (D. Ariz. 2006).

The STB's decision also analyzed the *Friberg*, *Maynard*, and *Elam* cases, which are all heavily relied upon by CSXT here to justify ICCTA federal question jurisdiction. *See Id.* at *8.[4] The STB found that "these cases . . . are not inconsistent with the [STB's] May 25 Guidance Decision." *Id. Friberg*, *Maynard*, and *Elam* courts all found that the claims preempted by the ICCTA were not safety-related and thus the FRSA did not apply. Contrarily, "In the present case, however, as the Board explained in its May 25 Guidance Decision, [Plaintiffs'] state law tort claims concerning the accident at the crossing appear to be focused on purely safety-related issues." *Id.* at *7.

In sum, "the [STB] Board explained that the claims brought by [Plaintiffs] were properly considered rail safety-related claims for which questions of preemption are governed by the preemption provisions of FRSA, including § 20106(b), and not by § 10501(b)." *Waneck II*, 2018 WL 5723286 at *2. As a result, there is no federal question jurisdiction predicated on complete ICCTA preemption. Plaintiffs' crossing maintenance claims should be reinstated and this entire case should be remanded back to state court.

## IV.   THE 2007 PREEMPTION CLARIFICATION AMENDMENT MAKES CLEAR THAT THE FRSA DOES NOT CONFER FEDERAL QUESTION JURISDICTION

Prior to 2007, there was a split among circuits regarding whether the FRSA conferred complete federal question jurisdiction. However, the complete preemption interpretations created vastly unjust results.[5] As a result, in 2007, the United States Congress clarified 49

---

[4] (discussing *Elam v. Kansas City Southern Railway*, 635 F.3d 796, 807-08 (5th Cir. 2011); *Maynard v. CSX Transportation, Inc*., 360 F. Supp. 2d 836 (E.D. Ky. 2004);  *Friberg v. Kansas City Southern Railroad*, 267 F.3d 439, 444 n. 18 (5th Cir. 2001).)

[5] *See Lundeen v. Canadian Pac. Ry. Co*., 447 F.3d 606, 613 (8th Cir. Minn. 2006); *Mehl v. Canadian Pac. Ry*., 417 F. Supp. 2d 1104, 1108 (D.N.D. 2006) (both superseded by statute 49 U.S.C. § 20106).

U.S.C. § 20106 by adding the following provision:

> (b) Clarification regarding State law causes of action.--(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party—
>> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
>> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
>> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C. § 20106.

Complete preemption, when used as a basis for federal question jurisdiction, is unlike ordinary preemption, and is less common and more extraordinary.[6] *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir.2008).[7]  It is a rare and narrow exception that courts reach reluctantly. *Bates v. Missouri & N. Ark. R.R. Co.*, 548 F.3d 634, 636 (8th Cir. 2008). Post-2007 courts have consistently found the "FRSA does not completely preempt state law tort claims against railroads for failure to comply with federal railroad crossing regulations because it does not create a federal remedy." *Stevenson v. Fort Worth & W. R. Co.*, No. 3:15-CV-0625-B,

---

[6] "The Supreme Court has found complete preemption in only three classes of cases: Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185; the Employee Retirement Income Security Act of 1975 (ERISA), 29 U.S.C. §§ 1001-1461; and the National Bank Act, 12 U.S.C. § 38." *Firstcom, Inc. v. Qwest Corporation,* 555 F.3d 669, 677 at n. 6 (8th Cir. 2009)

[7] *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 563-64 (6th Cir.2007); *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 864 n. 4 (11th Cir. 2008).

2015 WL 3884645, at *2 (N.D. Tex. June 24, 2015)[8]  The unavailability of a federal remedy for

Plaintiffs' claims, which cannot be disputed, militates against removal to federal court.  *See*

*Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1093 (S.D. Ill. 2007).  Here, there simply is no

remedy for these Plaintiffs under federal law—it doesn't exist.

The lack of a federal cause of action under the FRSA, also shows that there was no

congressional intent for "complete preemption."  *See City of Hays, Kansas v. Big Creek*

*Improvement District,* 5 F.Supp.2d 1228, 1230 (D. Kan. 1998).  The "touchstone of the federal

district court's removal jurisdiction is … the intent of Congress."  *Metropolitan Life v. Taylor*,

481 U.S. 58, 66 (1987).  A federal cause of action must make it possible for a plaintiff to

vindicate their rights and the unavailability of a federal cause of action is a "missing welcome

mat" to attempts at removal.  *Schmeling v. NORDAM,* 97 F.3d 1336, 1342 (9th Cir. 1996);

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308, 314, (2005).  Here,

Congressional intent is clear—no complete preemption on Plaintiffs' state law claims. *See* 49

U.S.C. § 20106. As a result, this case should be remanded to state court.

## V.   FIFTH CIRCUIT HELD THAT ICCTA DOES NOT PREEMPT SAFETY-RELATED NEGLIGENCE CLAIMS BASED ON A CROSSING COLLISION

In *Elam v. Kansas City Southern Railway Company*, the plaintiff sued KCS after her

automobile collided with a KCS train. 635 F.3d 796, 801 (5th Cir. 2011).  Plaintiff pursued two

different claims, a *negligence per se* claim based on Mississippi's antiblocking statute (which

limits the amount of time a train may occupy a crossing), as well as a simple common-law

negligence claim.  The Fifth Circuit held that the *negligence per se* claim was preempted by

ICCTA because Mississippi's antiblocking statute was a direct attempt to manage KCSR's

---

[8] *See also, Smallwood v. Illinois Cent. R.R. Co*., 385 F.3d 568, 575-576 (5th Cir. 2004)*; Fuller v. BNSF Ry. Co*., 472 F. Supp. 2d 1088, 1093 (S.D. Ill. 2007); *Sullivan v. BNSF Ry. Co*., 447 F.Supp.2d 1092, 1099 (D. Ariz. 2006).

switching operations in the **economic** realm.   *See Id.*at 806-07.   After carefully reviewing ICCTA and its legislative history, the Fifth Circuit found that ICCTA completely preempts state laws that "directly attempt to manage or govern a railroad's decisions in the economic realm." *See Id.*at 807.   Hence, the *negligence per se* claim was preempted by ICCTA because it was based on Mississippi's antiblocking statute, which attempted to regulate KCSR's switching operations in the economic realm.   *See Id.*

Conversely, the Fifth Circuit held that ICCTA did *not* preempt the simple state common law negligence claim.   The Court held that "[a] typical negligence claim seeking damages for a typical crossing accident. . .does not directly attempt to manage or govern a railroad's decisions in the economic realm."   *Id.*at 813.   Rather, the typical negligence claim arising from a crossing accident has a "mere remote or incidental effect on rail transportation."   *Id.*at 805.   Hence, the Fifth Circuit held that "the effects of state negligence law on rail operations are merely incidental."   *See id.*

Accordingly, the Fifth Circuit sent the case back down to the district court to decide whether to remand the common law negligence claim back to state court.   The district court did ultimately decide to remand the negligence claim back to state court, following the Fifth Circuit's analysis: "the [district court] is of the opinion that the [common law negligence claims] are the equivalent of a routine crossing case which is typically resolved in state court."   *See Elam v. Kansas City Southern Railway Company*, No. 1:08-cv-304-D-D, 2011 WL 2006346 (N.D. Miss. May 23, 2011).   Further, the district court's ruling was later upheld by the Fifth Circuit, which once again held that ICCTA did not create federal question jurisdiction over the common

law negligence claim for a typical crossing accident.  *See Elam v. Kansas City Southern Ry. Co.*, 465 Fed. Appx. 369 (5th Cir. 2012) (upholding district court's remand ruling).

Applied here, ICCTA does not preempt any of Plaintiffs' claims and this case should be remanded to state court.  The claims here are all common law negligence claims based on a typical crossing accident.  Plaintiffs are not pursuing a *negligence per se* claim based on a state antiblocking statute.  Hence, CSXT's sole basis for federal question jurisdiction was rejected by the Fifth Circuit.  Furthermore, it was rejected by at least four federal district courts that followed the Fifth Circuit's holding in *Elam*, as well as one additional federal court that addressed this issue prior to *Elam*.

Moreover, in *Barrois*, *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321 (5th Cir. 2008), the Fifth Circuit again addressed the law that ordinary crossing disputes are traditionally state causes of action.  The *Barrois* Court held:

> Routine crossing disputes are not typically preempted. Crossing disputes, despite the fact that they touch the tracks in some literal sense, thus do not fall into the category of "categorically preempted" or "facially preempted" state actions. The STB has explained that "[t]hese crossing cases are typically resolved in state courts."

*Barrois*, 533 F.3d at 332-33 (citations omitted).  Thus, even though "the FRSA, will be at issue in this case, the applicable jurisprudence is clear that federal jurisdiction cannot be achieved by asserting a federal law basis for affirmative defenses." *BNSF Ry. v. Town of Vinton*, 2006 WL 2915217 (W.D. La. Oct. 6, 2006) (citations omitted).

Here, Plaintiffs' State Court Petition states claims against the Defendants based on state common law negligence and intentional indifference to public safety.  No claim for relief is sought under federal law.  Federal question jurisdiction exists only where a question of federal

law appears on the face of plaintiff's "well-pleaded" complaint. *Caterpillar, Inc. v Williams*, 482 U.S. 386, 392 (1987).  Because Plaintiffs' claims can be sustained solely on state law alone, the ancillary mention of federal regulations does not provide the basis for federal question jurisdiction. Under the well pleaded complaint rule, Plaintiffs' claims are not "arising under" federal law.  Simply, there is no federal question jurisdiction and remand is appropriate.

## VI.   SEVERAL OTHER FEDERAL COURTS HAVE SIMILARLY REJECTED CSXT'S ARGUMENT

In *Anderson v. Union Pacific Railway Company*, the Middle District of Louisiana followed *Elam* in holding that ICCTA did not create federal question jurisdiction over numerous personal injury claims allegedly caused by a train derailment.  No. 10-cv-193-DLD, 2011 WL 4352254 (M.D. La. Sept. 16, 2011).  The district court quoted *Elam's* reasoning for why the typical crossing accident is not preempted by ICCTA: "'[a] typical negligence claim seeking damages for a typical crossing accident [ ] does not directly attempt to manage or govern a railroad's decisions in the economic realm.'"  *Id.* at *3.  The court then analyzed the plaintiffs' complaint, noting that it was merely a "simple suit for personal injury damages based on state law negligence."  *Id.* The court held that there was "nothing in the petition or answer that directly or impliedly has 'the effect of managing or governing rail transportation.'"  *Id.* Hence, because ICCTA did not preempt the state common law claims, there was no federal question jurisdiction and the court remanded the case back to state court.

In *Rawls v. Union Pacific Railway Company*, the Western District of Arkansas followed *Elam* in holding that ICCTA did not create federal question jurisdiction over a typical crossing accident.  No. 1:09-cv-01037, 2012 WL 2803764 (W.D. Ark. Jul. 10, 2012).  This case involved a crossing accident between a Union Pacific train and a pickup truck stalled on the crossing.  The

district court relied heavily on *Elam* for its analysis, noting that *Elam* was the most recent on-point ICCTA preemption case.  *See Id.*at *5.  Applying *Elam*, the court noted that "Plaintiffs seem to make typical negligence claims seeking damages for a typical crossing accident."  *Id.*at *7.  The court held that none of the plaintiffs' typical state common law negligence claims attempted to manage or govern Union Pacific's decisions in the economic realm.  *See Id.* Rather, the plaintiffs sought to "impose state *safety* regulation, while the federal regulation in question is *economic*."  *Id.*(emphasis in original).  Hence, because ICCTA did not preempt the state common law claims, there was no federal question jurisdiction and the court remanded the case back to state court.

In *Staley v. BNSF Railway Company*, the District of Montana followed *Elam* in holding that ICCTA did not create federal question jurisdiction over a typical crossing accident.  No. CV14-136-BLG-SPW, 2015 WL 860802 (D. Mt. Feb. 27, 2015).  This case involved a crossing accident between a BNSF train and a beet truck that was crossing the tracks but could not see the oncoming train due to another BNSF train that was idle on the tracks.  *See Id.*at *1.  The district court relied heavily on *Elam* for its analysis.  *See Id.*at *7.  Citing *Elam*, the court noted that Congress has not "manifested an intent for the ICCTA to preempt all negligence claims against the railroads."  *Id.*(citing *Elam*).  Applying *Elam*, the court noted that the plaintiff was "asserting simple negligence claims."  *See Id.* The court held that none of the plaintiffs' typical state common law negligence claims would unreasonably burden BNSF's operations.  *See Id.* Hence, because ICCTA did not preempt the state common law claims, there was no federal question jurisdiction and the court remanded the case back to state court.

*Trejo v. Union Pacific Railway Company* is another opinion, which like *Elam*, is often

cited by federal courts addressing ICCTA preemption over state common law negligence claims. Although *Trejo* was decided two months before the Fifth Circuit issued its opinion in *Elam*, the Eastern District of Arkansas arrived at the same conclusion. This case involved a typical crossing accident between a Union Pacific train and an automobile. The district court held that ICCTA did not preempt the state common law negligence claims based on an analysis similar to the Fifth Circuit's analysis in *Elam*. The court held that "[a] state tort action does not 'manage' or 'govern' railroad transportation but rather, at most, has some "incidental effect" on railroad transportation." *Id.* at *4. The court also noted that given the lack of a private ICCTA remedy, "concluding that the ICCTA completely preempts the Trejos' negligence claims would require concluding that Congress intended to leave persons injured due to negligent design and construction of railroad crossings without any remedy." *Id.* at 4. Lastly, the court noted that "Congress intended that the ICCTA regulate economic matters, not safety." *Id.* at *5. For these reasons, the district court held that ICCTA did not preempt the state common law negligence claims. Hence, there was no federal question jurisdiction and the court remanded the case back to state court.

Based on *Elam* and the several subsequent federal cases that have followed it, along with *Trejo*, it is clear that ICCTA does not completely preempt Plaintiffs' claims here, which are typical state common law negligence claims based on a typical crossing accident. Because the claims here are not preempted by ICCTA, there is no federal question jurisdiction. Accordingly, this case should be remanded back to state court in Dallas County.

**VII.    NONE OF CSXT'S CASES INVOLVE A TYPICAL CROSSING ACCIDENT AND AS PREVIOUSLY DISCUSSED PROVIDE NO GUIDANCE TO PLAINTIFFS' SAFETY-RELATED CLAIMS WHICH SHOULD BE INTERPRETED UNDER FRSA ANALYSIS NOT ICCTA**

In its Notice of Removal, CSXT relies on a number of cases to support its contention that federal question jurisdiction exists here based on ICCTA complete preemption.  However, none of those cases are persuasive because none of them involve the typical common law negligence claims being pursued here based on a typical crossing accident.

*Friberg v. Kansas City Southern Railway Company* involved a claim based on an antiblocking statute, which Plaintiffs are not pursuing here.[9]  *In re Katrina Breaches Consolidated Litigation* did not involve a crossing accident but, instead, involved an alleged failure to repair a large gap in a floodgate.[10]  *Wisconsin Cent. Ltd. v. City of Marshfield* involved a condemnation proceeding, far afield from the circumstances here.[11]  *City of Auburn v. United States* involved a review of an agency's decision on re-opening a railway line.[12]  *Cedarapids, Inc. v. Chicago, Central & Pacific Railway Company* involved abandonment of railway lines.[13]  *Rushing v. Kansas City Southern Railway* involved noise abatement.[14]  *CSX Transportation, Inc. - Petition for Declaratory Order* involved a local prohibition of transporting hazardous materials.[15]  Finally, *PCI Transportation, Inc. v. Fort Worth & W.R. Company* involved a breach of contract claim.[16]

---

[9]  *Friberg*, 267 F.3d 439, 443 (5th Cir. 2001).

[10]  *In re Katrina*, 2007 WL 4573052, at *3 (E.D. La. Dec. 27, 2007).

[11]  *Wisconsin Cent. Ltd* 160 F.Supp.2d 1009, 1013-1014 (W.D.Wis. 2000).

[12]  *City of Auburn*, 154 F.3d 1025, 1027 (9th Cir. 1998).

[13]  *Cedarapids*, 265 F.Supp.2d 1005 (N.D. Iowa 2003).

[14]  *Rushing*, 194 F.Supp.2d 493, 498 (S.D. Miss. 2001).

[15]  *CSX Transportation*, 2005 WL 584026 (Mar. 14, 2005).

[16]  *PCI Transportation*, 418 F.3d 535, 543 (5th Cir. 2005).

None of these cases concern whether ICCTA completely preempts simple negligence claims based on a typical crossing accident.  In stark contrast, all of the cases cited by Plaintiffs are directly on point (*Elam* Fifth Circuit, *Elam* District Court, *Anderson*, *Rawls*, *Staley*, and *Trejo*) – as they all deal with the circumstances here, *i.e*., whether ICCTA preempts state common law negligence claims arising from a typical crossing accident.  Again, those cases all provide that remand to state court is required for the claims involved here – simple state common law negligence claims arising from a typical crossing accident.  These are clearly in the realm of FRSA [state law] jurisdiction as suggested by STB and 2007 amendment.

## CONCLUSION

Wherefore, Plaintiffs hereby respectfully request that this Court reinstate Plaintiffs' crossing maintenance claims and remand this case back to Harrison County Circuit Court consistent with the Fifth Circuit and STB and the other federal case guidance on the inapplicability of ICCTA preemption to Plaintiffs' safety-related negligence claims, and for all other relief this Court deems fair and just.

Respectfully submitted,

**BURNS, CUNNINGHAM & MACKEY, P.C.**

*/s/ William M. Cunningham, Jr.*
William M. Cunningham, Jr. (99879)
Troy T. Schwant (100394)
Post Office Box 1583
Mobile, Alabama 36633
*(Attorneys for Plaintiffs)*
Telephone: (251) 432-0612
Facsimile: (251) 432-0625
Email: wmcunningham@bcmlawyers.com
        tschwant@bcmlawyers.com
***ATTORNEYS FOR PLAINTIFFS***

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 20th day of November, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**CSX TRANSPORTATION, INC.**

Patrick R. Buchanan, Esq.                    S. Camille Reifers, Esq.
234 Caillavet St., Suite 100                 Boyle Brasher, LLC
PO. Box 1377                                 80 Monroe Ave., Suite 410
Biloxi, MS  39533-1377                       Memphis, TN  38103
mail@brownbuchanan.com                       creifers@boylebrasher.com


                                             */s/ William M. Cunningham, Jr.*
                                             OF COUNSEL