46626                  SERVICE DATE – LATE RELEASE OCTOBER 31, 2018
EB

SURFACE TRANSPORTATION BOARD

DECISION

PLAINTIFF'S
EXHIBIT

**3**

Docket No. FD 36167

JIMMY LEE WANECK AND STARR SWEARINGEN WANECK, ET AL.—PETITION FOR
DECLARATORY ORDER

Digest:[1]  The Board denies a petition of CSX Transportation, Inc., to reconsider a
prior Board decision providing guidance on the question of preemption
concerning safety-related claims arising from a collision between a train and a bus
at a railroad crossing.

Decided:  October 31, 2018

In a decision served on May 25, 2018, the Board denied a petition for declaratory order
filed by Jimmy Lee Waneck and Starr Swearingen Waneck, for themselves and 58 other
individuals (collectively, Petitioners).  Petitioners had sought a ruling that the provisions of
49 U.S.C. § 10501(b) do not preempt certain state law claims arising from a collision between a
CSX Transportation, Inc. (CSXT), train and a tour bus at a railroad crossing resulting in injury
and death to several bus passengers.  Waneck—Pet. for Declaratory Order (May 25 Guidance
Decision), FD 36167 (STB served May 25, 2018).  In denying the request for declaratory order,
the Board provided guidance indicating that preemption of safety-related rail claims, such as
those brought by Petitioners in state court, should be governed by the preemption provisions of
the Federal Railway Safety Act (FRSA) and not by 49 U.S.C. § 10501(b), as amended by the
ICC Termination Act of 1995 (ICCTA).  On June 14, 2018, CSXT filed a petition for
reconsideration asking the Board to withdraw the guidance provided in the May 25 Guidance
Decision or amend it to clarify that preemption under § 10501(b) applies to state law claims such
as those brought by Petitioners.  For the reasons explained below, the Board will deny CSXT's
petition for reconsideration.

BACKGROUND

On March 7, 2017, Petitioners were passengers on a tour bus when it was struck by a
freight train owned and operated by CSXT at a crossing in Biloxi, Miss.  May 25 Guidance
Decision, FD 36167, slip op. at 1.  The collision caused several fatalities and numerous life-
altering injuries.  Id.  The passengers and their surviving family members filed multiple lawsuits

---

[1]  The digest constitutes no part of the decision of the Board but has been prepared for the
convenience of the reader.  It may not be cited to or relied upon as precedent.  See Policy
Statement on Plain Language Digests in Decisions, EP 696 (STB served Sept. 2, 2010).

in Mississippi and Texas state courts against CSXT, its parent company, and the tour bus operators and owners.  The two primary cases are Waneck v. CSX Transportation, Inc., C.A. No. 1:17-cv-00106, which was filed in Mississippi state court; and Voigt v. CSX Transportation, Inc., C.A. No. 3:17-cv-01018, which was filed in Texas state court.  In these cases, Petitioners generally allege that CSXT had:  (1) acted negligently by operating its train in a manner that did not allow the train to stop in time to avoid the collision; and (2) acted negligently with respect to the inspection, maintenance and repair of the crossing—including failure to comply with applicable Federal Railroad Administration (FRA) safety regulations and CSXT's own standards created pursuant to such regulations—thereby creating a severe incline or hump at the crossing that caused the bus to become "high-centered" and stuck at the crossing.[2]  (Waneck Pet., Ex. C at 8-13, Ex. D at 7.)

The Waneck case was removed to the U.S. District Court for the Southern District of Mississippi, and the Voigt case was removed to the U.S. District Court for the Northern District of Texas.  See May 25 Guidance Decision, FD 36167, slip op. at 2.  In Voigt, the district court denied a motion to remand back to state court, found that all the state law claims were completely preempted by § 10501(b), and directed plaintiffs to respond to CSXT's motion to dismiss for lack of jurisdiction.  Id.  In August 2017, plaintiffs voluntarily dismissed their claims against CSXT, and there are no claims currently pending against CSXT in the Voigt case.  Id.  In Waneck, in a decision issued on March 29, 2018, the court granted in part and denied in part a motion to dismiss by CSXT.  (CSXT Pet. 3.)  The district court dismissed claims related to the inspection, maintenance, and repair of the crossing, finding that they were preempted by 49 U.S.C. § 10501(b), but did not dismiss claims alleging unsafe operation of the train, which CSXT sought to have dismissed as preempted by FRSA.  (Id. at 3, 10.)

On March 5, 2018, Petitioners filed a petition for a declaratory order with the Board requesting a finding that state tort law claims that fall within the scope of 49 U.S.C. § 20106(b),[3] a provision known as FRSA's "savings clause," are not preempted by § 10501(b).  (Waneck

---

[2]  CSXT argues that the May 25 Guidance Decision incorrectly characterized certain of Petitioners' claims as pertaining only to crossing "maintenance" and that the court in Waneck correctly held that these claims were, in reality, claims based on the "design and construction" of the crossing.  Whether the claims are characterized as related to "maintenance" or "design or construction" was not relevant to the Board's May 25 Guidance Decision and does not affect the Board's guidance here.  The relevant inquiry is whether Petitioners' claims are safety-related or not.

[3]  Section 20106(b) reads:  "(1) [n]othing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party—(A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section; (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2)."

Pet. 1.)  In response, the Board explained that because the preemption issue had already been presented to the U.S. District Court for the Southern District of Mississippi, which had not referred any issues to the Board, and because courts have concurrent jurisdiction to decide issues of preemption, the Board would not issue a declaratory order.  May 25 Guidance Decision, FD 36167, slip op. at 3.  The Board, however, did provide guidance to the parties and the courts on the preemption issue.  Specifically, the Board explained that the claims brought by Petitioners were properly considered rail safety-related claims for which questions of preemption are governed by the preemption provisions of FRSA, including § 20106(b), and not by § 10501(b). May 25 Guidance Decision, FD 36167, slip op. at 4.

On June 14, 2018, CSXT filed a petition for reconsideration requesting that the Board withdraw the guidance it provided in its May 25 Guidance Decision, or, failing that, amend its guidance to clarify that ICCTA preemption applies to state law claims such as those brought by Petitioners.  (CSXT Pet. 2.)  CSXT argues that the Board committed material error because: (1) at the time the Board issued guidance, there was no longer an active preemption dispute in court; (2) the Board's guidance is inconsistent with precedent; and (3) the guidance was mistaken to the extent it was based on a misunderstanding regarding the scope of the ICCTA preemption ruling sought by CSXT and granted by the courts.  (CSXT Pet. 2-11.)

On July 5, 2018, Petitioners filed a reply to CSXT's petition for reconsideration. Petitioners argue that (1) the preemption issues are not moot because Petitioners plan to seek reconsideration of these claims; (2) the Board's guidance indicating that preemption of rail safety-related claims is governed by FRSA rather than ICCTA is consistent with precedent; (3) the Board did not misunderstand the preemption issues before the court and issued appropriate guidance in response to Petitioners' request in the petition for declaratory order; and (4) the Board's guidance represents sound policy because a contrary position would constitute an implied repeal of § 20106(b) and would foreclose any remedy for plaintiffs injured by a railroad's failure to safely maintain a rail crossing.  (Waneck Reply 3-15.)

DISCUSSION AND CONCLUSIONS

A party may seek reconsideration of a Board decision by submitting a timely petition that (1) presents new evidence or substantially changed circumstances that would materially affect the case; or (2) demonstrates material error in the prior decision.  49 U.S.C. § 1322(c); 49 C.F.R. § 1115.3; see also W. Fuels Ass'n v. BNSF Ry., NOR 42088, slip op. at 2 (STB served Feb. 29, 2008).  In a petition alleging material error, a party must do more than simply make a general allegation; it must substantiate its claim of material error.  See Can. Pac. Ry.—Control—Dakota, Minn. & E. R.R., FD 35081, slip op. at 4 (STB served May 7, 2009).  If a party has presented no new evidence, changed circumstances, or material error that "would mandate a different result," then the Board will not grant reconsideration.  See Montezuma Grain v. STB, 339 F.3d 535, 541-42 (7th Cir. 2003); Atlanta Dev. Auth.—Verified Pet. for Declaratory Order, FD 35991, slip op. at 5 (STB served May 26, 2017).  For the reasons explained below, the Board finds that CSXT has failed to demonstrate material error in the Board's prior decision.

The Issuance of Guidance Was Appropriate.  CSXT first argues that the Board committed material error by issuing its guidance because the preemption questions at issue had already been

3

"fully and finally decided" by the courts prior to the issuance of the guidance.  (CSXT Pet. 2.)  Specifically, CSXT notes that in Voigt, the plaintiffs voluntarily dismissed their claims in August 2017, and that in Waneck, the district court not only issued an order in March 2018 granting dismissal of certain claims that CSXT asserted were preempted by ICCTA, it also denied a motion for reconsideration of the preemption ruling in April 2018.  (Id. at 2-3.)[4]

Petitioners reply that there is no legal basis for CSXT's position and that, in any event, when the Board issued the May 25 Guidance Decision, the preemption issues had not in fact been definitively resolved before the courts and still have yet to be finally and fully resolved.  Petitioners include a verified statement from counsel for plaintiffs in Waneck explaining that plaintiffs expect to seek referral to the Board and/or reconsideration of the court's holding that claims related to crossing maintenance were preempted, as well as a verified statement from counsel for some of the plaintiffs in the Voigt case explaining that those plaintiffs will soon renew their state law claims in Mississippi or another appropriate forum.  (Waneck Reply 4, V.S. Cunningham 2, V.S. Toups 2.)  Petitioners argue that the Board provided guidance to *all* of the Petitioners, not just the plaintiffs in the Waneck case.  (Waneck Reply 4.)

The Board finds CSXT's argument to be without merit.  CSXT fails to recognize that the guidance that the Board issued was just that—guidance.  The Board reasonably provided guidance to assist "the court and the parties," noting relevant precedent involving the interplay between § 10501(b) and FRSA preemption.  May 25 Guidance Decision, slip op. at 3-4.  That guidance explains the Board's view of the preemption issue, but it is not binding or controlling in these cases, as the preemption issues are properly before the district courts (or potentially the relevant courts of appeals)[5] and those courts have concurrent jurisdiction to determine preemption.  CSXT cites to no authority that suggests the Board is prohibited from issuing purely advisory guidance, even where a court has initially ruled on an issue.  Indeed, the Board often provides guidance to parties and courts on ICCTA preemption issues.  See, e.g., Adrian & Blissfield R.R.—Pet. for Declaratory Order, FD 36148, slip op. at 4 (STB served Jan. 31, 2018); Ingredion Inc.—Pet. for Declaratory Order, FD 36014, slip op. at 3 (STB served Sept. 30, 2016).  It is appropriate to issue such guidance, even where a case is pending in court (or a court has already addressed some of the issues presented), because the guidance issued by the Board in such cases is purely advisory.  See generally Nat'l Mining Ass'n v. McCarthy, 758 F.3d 243, 252-53 (D.C. Cir. 2014) (holding agency's "Final Guidance" that was not intended to direct the activities of regulated parties or limit the exercise of authority by other government entities had no binding legal effect); Nat'l Ass'n of Home Builders v. Norton, 415 F.3d 8, 15 (D.C. Cir. 2005) ("recommended" protocols not intended to impose prohibitions or restrictions are not

---

[4]  CSXT now informs the Board that plaintiff's motion in Waneck for reconsideration of the court's order was denied on April 26, 2018, nearly a month before the May 25 Guidance Decision.  (CSXT Pet. 3.)  However, this fact was not on the record at the time the Board issued its guidance, and even if it had been, the possibility of an appeal would have remained.

[5]  Moreover, with respect to Petitioners' FRSA related claims, it would be beyond the Board's purview to interpret FRSA or to opine on how § 20106(b) might apply to the claims at issue in court.  May 25 Guidance Decision at 3.

agency decisions from which legal consequences flow or by which legal rights or obligations have been determined).

The Board's Guidance Was Consistent with Precedent.  CSXT claims that the Board materially erred in its guidance by stating that preemption questions concerning rail safety-related claims are governed by § 20106(b) and not by § 10501(b).  (CSXT Pet. 4-8.)  According to CSXT, this legal conclusion represents a new and narrower interpretation of ICCTA preemption that cannot be reconciled with established precedent, including previous Board decisions.  (Id. 8-9.)  For the reasons explained below, the Board disagrees.

As an initial matter, the Board disputes CSXT's general assertion that the May 25 Guidance Decision stated that "ICCTA never can apply to safety-related claims" and that "'rail safety-related claims' can only be preempted by FRSA."  (CSXT Pet. 8.)  This is an overly broad reading of the decision.  To be sure, the overwhelming weight of precedent holds that safety issues are generally governed by FRSA preemption.  But, as we explain below, there can be rare cases when both FRSA and ICCTA preemption may apply.

Contrary to CSXT's assertion, the May 25 Guidance Decision was consistent with the current state of the law.  In § 20106, Congress delineated which types of state laws, regulations, and tort claims are preempted by FRSA and which are saved from FRSA preemption.  However, because the ICCTA preemption provision can be read to cover virtually everything related to rail transportation and because rail safety-related claims will almost always touch on rail transportation and operations, interpreting ICCTA preemption to apply generally to safety regulations and safety-related claims would amount to a repeal by implication of the savings provision of FRSA.  See Tyrrell v. Norfolk S. Ry., 248 F.3d 517, 522-23 (6th Cir. 2001); accord Island Park, LLC v. CSX Transp., 559 F.3d 96, 106-08 (2d Cir. 2009).  Where two federal statutes are in apparent conflict, courts and the Board must attempt to read them in harmony and give effect to both to the extent possible rather than assuming Congress repealed one by implication.  E.g., Ass'n of Am. R.R. v. S. Coast Air Quality Mgmt. Dist., 622 F.3d 1094, 1097 (9th Cir. 2010); Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 381 (1998).  Thus, § 10501(b) does not broadly subsume safety-related claims, as CSXT suggests.

For example, in Tyrrell, which the Board relied upon in the May 25 Guidance Decision, the court explained that determining whether an Ohio track clearance regulation was preempted required analysis under FRSA's preemption provision rather than ICCTA's.  Tyrrell, 248 F.3d at 522-23.  The court reasoned that reading ICCTA preemption to apply to any state rail safety regulation that tangentially touches upon rail construction or other operational matters would repeal FRSA's preemption provision by implication with no indication that Congress intended such a result.  Id.

Despite the clear holding of Tyrrell, CSXT argues that the case actually stands for the proposition that rail safety-related claims should be examined under both the ICCTA and FRSA preemption provisions.  (CSXT Pet. 7.)  No fair reading of Tyrrell supports such an interpretation.  The court in Tyrrell found that because the regulation at issue had "a connection with rail safety. . . FRSA provides the applicable standard for assessing federal preemption" and rejected the district court's position that "even if . . . the regulation addressed workplace safety,

the ICCTA remained the proper statute for analysis . . ." Id. at 521, 524. This was precisely the position that the Board advanced before the court in Tyrrell as amicus[6] and provided again in the May 25 Guidance Decision.

In Iowa, Chicago & Eastern Railroad v. Washington County, Iowa, 384 F.3d 557, 558 (8th Cir.2004)—another case referenced in the May 25 Guidance Decision—the U.S. Court of Appeals for the Eighth Circuit reached the same conclusion as the court in Tyrrell regarding the relationship between FRSA and ICCTA. In that case, the county sought and obtained an order from the Iowa Department of Transportation requiring the railroad to replace several bridges at rail-highway crossings. As pertinent here, the county sought replacement of the bridges because they were designed or constructed in a manner that created unsafe conditions at the crossings, including one that was constructed such that it had a sharp crest creating the risk that large vehicles would bottom out on the crossing. Id. The railroad argued that the regulation cited as the basis for the order was preempted by ICCTA. Id. The court rejected this argument and refused to apply an ICCTA preemption analysis to issues related to rail safety. Id. at 560. Contrary to CSXT's suggestions, the Eighth Circuit followed Tyrrell, explaining that "the FRSA, not ICCTA, determines whether a state law relating to rail safety is preempted" and finding that the regulation at issue should be analyzed under FRSA because "rail safety" includes the highway safety risks created at rail crossings. Id. at 560. Similarly, the claims in the instant case relate to the risks of injury and death created by CSXT at a rail crossing and should be analyzed under FRSA.

The position expressed in Tyrrell and Iowa, Chicago & Eastern Railroad is consistent with numerous other subsequent court decisions. For example, the Iowa Supreme Court in Griffioen v. Cedar Rapids & Iowa City Railway recently found that state law claims concerning property damage from flooding were not safety-related, and therefore were subject to ICCTA preemption and not FRSA preemption. 914 N.W.2d 273, 289 (Iowa 2018). In so holding, the court explained that "courts have uniformly held that FRSA deals with rail safety" and that when state law addresses rail safety matters, preemption is analyzed under FRSA, not ICCTA. Id. Other cases dealing with the interplay of the two statutes have reached the same result.[7]

---

[6] CSXT claims that the Board adopted a position in its amicus brief in Tyrrell that was the opposite of that expressed in the May 25 Guidance Decision. (CSXT Pet. 7-8.) However, the amicus brief stated with respect to the relationship between ICCTA and FRSA that "the most reasonable reading of the statutory scheme is that section 10501(b) applies only to non-safety railroad regulation and that Congress intended to retain the well settled safety authority of the FRA and the states under FRSA when it enacted section 10501(b)." Brief of Surface Transportation Board as Amicus Curiae in Support of Appellant at 19, Tyrrell v. Norfolk S. Ry., 248 F.3d 517 (6th Cir. 2000) (No. 99–4505). This position is consistent with the May 25 Guidance Decision.

[7] See Island Park, 559 F.3d at 108 ("It is abundantly clear that the closure order sufficiently implicates rail safety concerns such that FRSA and not ICCTA is the principal governing statute in determining whether state authority is pre-empted."); Waubay Lake Farmers Ass'n v. BNSF Ry., No. CIV 12-4179, slip op. at 8 (D.S.D. Aug. 28, 2014) ("When the state statute addresses rail safety, then courts analyze preemption under FRSA. When the state statute

(continued…)

CSXT's suggestion that the May 25 Guidance Decision is inconsistent with the Board's prior decision in Tubbs—Petition for Declaratory Order, FD 35792 (STB served Oct. 31, 2014), aff'd 812 F. 3d 1141 (8th Cir. 2015), is also incorrect.  In Tubbs, the Board found that non-safety-related state law tort claims alleging that a rail line was designed, constructed, and maintained in a way that caused flooding-related property damage were preempted by ICCTA.  Tubbs, FD 35792, slip op. at 6-7.  The Board, however, also found that tort claims based on a failure to comply with federal rail safety regulations regarding drainage were governed by FRSA, and not subject to ICCTA preemption.  Id. at 7.  Thus, the Board's action in Tubbs was consistent with the May 25 Guidance Decision and the case law discussed above.[8]

CSXT focuses on the Board's statement in Tubbs that FRSA and ICCTA should be harmonized, with "each statute given effect to the extent possible."  CSXT also points to the Board's holding that the FRA regulations at issue in that case, and the associated tort claims, were not preempted by ICCTA because those regulations "do not directly conflict with the uniform federal regulation of railroads under [ICCTA]."  (CSXT Pet. 6 (quoting Tubbs).)  CSXT claims this language demonstrates that an ICCTA preemption analysis should be applied generally to rail safety-related claims and regulations, including federal rail safety regulations.  (Id.)  To the contrary, read in context, these statements simply restate the principle that regulation of rail safety, which Congress explicitly permitted under FRSA, is not inconsistent with regulation of interstate rail transportation under ICCTA and that, to give effect to both statutes, safety regulations and related claims are generally not subject to ICCTA preemption.

CSXT also argues that the May 25 Guidance Decision is inconsistent with the Board's decision in CSX Transportation, Inc.—Petition for Declaratory Order (CSXT I), FD 34662 (STB served Mar. 14, 2005), recon. denied (CSXT II) (STB served May 3, 2005), in which the Board found that a primarily safety-related regulation was preempted by ICCTA.  The Board disagrees.

---

(…continued)

addresses construction or economic concerns, then courts analyze preemption under ICCTA.") (citations omitted); Rawls v. Union Pac. R.R., No. 1:09-CV-01037, slip op. at 14 (W.D. Ark. July 10, 2012) ("[T]his case is about safety claims.  'The FRSA, not ICCTA, determines whether a state law relating to rail safety is preempted.'") (quoting Iowa, Chi. & E. R.R. Corp., 384 F.3d at 560).  The Board recognizes that the caselaw is not completely uniform with respect to the relationship between ICCTA and FRSA.  See Ayling v. BNSF Ry., No. 2:14–cv–42, slip op. 9-10 (D.N.D. Oct. 20, 2014) (acknowledging precedent holding that FRSA, not ICCTA, governs whether state law relating to rail safety is preempted but applying both ICCTA and FRSA to claims relating to injuries allegedly caused by the manner in which BNSF conducted switching operations).  However, the weight of the precedent supports the proposition that ICCTA does not generally apply to safety-related laws or claims.

[8] Compare Tyrrell, 248 F.3d at 522-23 (claims alleging track design and construction failed to comply with safety regulation subject to FRSA, not ICCTA), and, Iowa, Chi. & E. R.R., 384 F.3d at 560 (order requiring redesign and replacement of bridges at crossing for safety reasons governed by FRSA, not ICCTA), with Griffioen, 914 N.W.2d at 289 (claims alleging negligent construction caused flooding-related property damage were not safety-related and thus governed by ICCTA), and Waubay Lake, slip op. at 8 (same).

As the recently-decided Griffioen case notes, it can sometimes be difficult for courts and the Board to draw the line between safety-related claims (subject to FRSA preemption) and non-safety operational-related claims (subject to ICCTA preemption).  914 N.W. 2d at 289.  In fact, in rare cases, there can be overlap to such an extent that both FRSA and ICCTA preemption may apply.  The regulation at issue in CSXT I and CSXT II presented such a case.  The local regulation at issue in those decisions attempted to severely limit (or even halt) the rail shipment of hazardous materials through the District of Columbia.  While the regulation was primarily safety-related, and thus subject to FRSA preemption, it also implicated ICCTA preemption because, by prohibiting the railroad's carriage of certain commodities without local government approval, it directly conflicted with the Board's exclusive jurisdiction over interstate rail transportation.  See CSXT II at 5-7; see also Riffin v. STB, 733 F.3d 340, 344-47 (D.C. Cir. 2013) (explaining that it is for the Board to make policy judgments concerning the common carrier obligation, including the obligation to carry hazardous materials); Norfolk S. R.R. v. City of Alexandria, 608 F.3d 150 (4th Cir. 2010) (finding that a local safety-related regulation that controlled whether and how certain commodities were transported from a railroad's transload facility through the city was preempted under ICCTA).  In the present case, however, as the Board explained in its May 25 Guidance Decision, Petitioners' state law tort claims concerning the accident at the crossing appear to be focused on purely safety-related issues.[9]  Unlike the regulation at issue in CSXT I and CSXT II, Petitioners' claims dealing with allegedly unsafe conditions at a rail crossing are not in direct conflict with the Board's exclusive jurisdiction over transportation that is part of the interstate rail network.[10]

---

[9]  The Board acknowledges that a safety-related claim may have an indirect effect on rail operations.  However, that does not necessarily mean that the claims are not primarily safety-related.  See Tyrrell, 248 F.3d at 523-24 (claims based on allegations of insufficient distance between tracks not subject to ICCTA preemption); Iowa, Chi. & E. R.R., 384 F.3d at 560 (order requiring redesign and replacement of bridges at crossing for safety reasons not subject to ICCTA preemption); Rawls, slip op. at 11, 13 (claims related to the design of a rail crossing where defendant claimed a redesign would require shutting down of the mainline to rebuild the tracks found to be governed by FRSA rather than ICCTA).

[10]  In a footnote, CSXT cites additional court decisions in support of the proposition that ICCTA preemption can apply to state law claims even when such claims may also be preempted by FRSA.  (CSXT Pet. 6-7 n. 2.)  These cases, however, are not inconsistent with the May 25 Guidance Decision.  In Elam v. Kansas City Southern Railway, the court found that negligence per se claims based on a violation of an anti-blocking statute were preempted by ICCTA.  635 F.3d 796, 807-08 (5th Cir. 2011).  However, the court explicitly stated that these claims were not safety-related and therefore FRSA did not apply.  Id. at 808.  In Maynard v. CSX Transportation, Inc., the court similarly explained that ICCTA rather than FRSA controlled because the claims at issue were "not related to railroad safety for purposes of section 20106."  360 F. Supp. 2d 836 (E.D. Ky. 2004) (internal quotation marks omitted).  In Friberg v. Kansas City Southern Railroad, the court also held that ICCTA preempted state law claims it found were not safety-related and explicitly declined to address arguments regarding the applicability of FRSA.  267 F.3d 439, 444 n. 18 (5th Cir. 2001).

<u>The Board Did Not Misunderstand CSXT's Preemption Arguments Before the Courts or the Holdings of the Courts</u>.  According to CSXT, the Board's guidance was a result of incorrect assumptions regarding CSXT's preemption arguments before the courts and the scope of the courts' holdings regarding preemption.  (CSXT Pet.10.)  CSXT claims that the Board offered broad guidance regarding the inapplicability of ICCTA preemption to all rail safety-related claims and that such broad guidance was inappropriate because CSXT argued, and the courts decided, only that ICCTA preempted certain of Petitioners' claims—those arising from the design and construction of the crossing.  (<u>Id.</u> at 10-11.)  CSXT notes that it challenged the Petitioners' remaining claims on non-ICCTA grounds, and that the district court in Waneck held those remaining claims were governed by FRSA.  (<u>Id.</u> at 10.)  For their part, Petitioners dispute CSXT's assertion that CSXT has argued that ICCTA preemption applies only to claims regarding the design and construction of the crossing.  (Waneck Reply 11-12.)

The Board did not misunderstand the issues decided by the courts.  Again, CSXT's reading of the <u>May 25 Guidance Decision</u> is overly broad.  The decision did not opine on whether any and all claims related to rail safety are subject to ICCTA preemption as CSXT suggests.  Rather, the Board addressed the specific claims at issue in <u>Voigt</u> and <u>Waneck.</u>  The Board explained that, in its view, all of Petitioners' claims were rail safety-related claims stemming from a fatal train collision with a bus and cited existing precedent providing that "any federal preemption questions concerning such claims are governed by what is cognizable under FRSA, including § 20106(b), not § 10501(b)."  <u>May 25 Guidance Decision</u>, FD 36167, slip op. at 4.  The fact that the Board's explanation applied to all of Petitioners' claims was simply meant to illustrate that, although CSXT asserted that only certain claims were subject to FRSA preemption, in fact, it appeared that all of Petitioners' claims regarding this matter were safety-related claims subject to FRSA preemption.  In any event, even if the Board's guidance can be read to be broader than necessary to assist in addressing the specific preemption questions at issue, the guidance is not binding, and it is ultimately up to the courts involved to determine federal preemption in this case.

For the reasons discussed above, the petition for reconsideration will be denied.

<u>It is ordered</u>:

1.  The petition for reconsideration is denied.

2.  This decision is effective on its service date.

By the Board, Board Members Begeman and Miller.